IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TRAVIS KATES,<br><br>    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | CASE NO. 3:25-CV-00180-DAC<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Plaintiff Travis Kates challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated Jan. 31, 2025). The parties then consented to my exercising jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF #9). For the reasons below, I **REVERSE** the Commissioner's decision and **REMAND** for additional proceedings consistent with this recommendation.

## PROCEDURAL BACKGROUND

Mr. Kates applied for SSI on January 28, 2022 and for DIB on February 4, 2022, alleging he became disabled on December 31, 2018 due to post-traumatic stress disorder, Chiari I malformation with seizures and migraines, bilateral knee pain, attention deficit hyperactivity disorder, and an impacted ear drum. (Tr. 207, 214, 218). After the claim was denied initially and on reconsideration, Mr. Kates requested a hearing before an Administrative Law Judge. (Tr. 74,

1

87-88, 111, 159-60). On September 7, 2023, Mr. Kates (represented by counsel) and a vocational expert (VE) testified before an ALJ, following which the ALJ determined he was not disabled. (Tr. 14-73). On December 4, 2024, the Appeals Council denied Mr. Kates' request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. §§ 404.981, 416.1481). Mr. Kates timely filed this action on January 31, 2025. (ECF #1).

## FACTUAL BACKGROUND

### I. Personal and Vocational Evidence

Mr. Kates was 31 years old on his alleged onset date and 36 years old at the hearing. (*See* Tr. 75). He has a GED. (*See* Tr. 688). He has past relevant work experience as a tree cutter. (Tr. 29). Mr. Kates also described a history of being hired and let go within three to four months due to his medical issues. (Tr. 65). The Detailed Earnings Inquiry documents Mr. Kates' work history with 50 different employers between 2006 and 2022. (Tr. 260-66).

### II. Relevant Medical Evidence[1]

In November 2020, Mr. Kates met with primary care physician David Winner, M.D., and complained of trouble focusing and keeping his thoughts organized. (Tr. 484). He described a history of ADHD and endorsed taking Adderall and Ritalin in the past. (*Id.*). Dr. Winner prescribed Strattera and, in January 2021, increased the dose.[2] (Tr. 469, 487).

---

[1] Mr. Kates takes issue with the ALJ's evaluation of medical opinions regarding his mental health impairments. I thus limit my review to the evidence relevant to those conditions.

[2] Strattera is a brand name for atomoxetine and is prescribed to "increase the ability to pay attention and decrease impulsiveness and hyperactivity" in those with ADHD. *See Atomoxetine, MedlinePlus*, http://medlineplus.gov/druginfo/meds/a603013.html (last accessed Nov. 13, 2025).

2

In April 2021, Mr. Kates returned to Dr. Winner's office and reported Strattera did not address his trouble focusing. (Tr. 465). Dr. Winner referred Mr. Kates to a psychiatrist for his ADHD. (Tr. 468).

In a prior disability application, the Division of Disability Determination referred Mr. Kates to James Kelly, M.Ed., for a consultative psychological evaluation of his ADHD and an assessment of his functional abilities and limitations in four dimensions:

- understanding, carrying out, and remembering instructions;
- sustaining concentration and persisting in work activities at a reasonable pace;
- maintaining effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public; and
- dealing with normal pressures in a competitive work setting.

(Tr. 384). During the clinical interview in August 2021 Mr. Kates reported he had been self-employed for six months, running a bike repair shop from his home. (Tr. 387). He reported last working for an employer in 2018 during which his performance evaluations and self-reported social adjustment were satisfactory. (*Id.*). In his report, Dr. Kelly observed that Mr. Kates "did not display significant attention deficit hyperactivity disorder symptoms during the interview," did not often require repeated or clarifying instructions, "worked persistently during the session with no apparent fatigue," "tracked the conversation throughout the interview and did not show distraction by ambient office noise," his pace was steady, and he did not report an "inability to adjust to workplace demands" or "mental or emotion deterioration in response to work exposure." (Tr. 390-92).

3

In November 2021, Mr. Kates underwent a mental health assessment where he described current stressors and his issues with anger, excessive worries, anxiety, restlessness, and troubles with concentration. (Tr. 789). He is their child's primary caregiver. (Tr. 794).

In July 2022, Mr. Kates underwent a second mental health assessment. (Tr. 803-14). He reported excessive anxiety about work and his personal life, decreased concentration, irritability, and poor sleep. (Tr. 803). Later that month, Mr. Kates met with a counselor and reported he resolved some personal stressors. (Tr. 818). On September 22, 2022, Mr. Kates met with a counselor again and reported the stressors in his personal life returned. (Tr. 821). He also described increased worries about working and concerns about caring for his son. (*Id.*).

In November 2022, during a consultative medical evaluation, Mr. Kates reported poor concentration, but the doctor described his concentration as "good." (Tr. 600).

In February 2023, Mr. Kates reported he no longer needed mental health counseling. (Tr. 824). The counseling agency closed Mr. Kates' file on April 25, 2023. (*Id.*).

III.    **Relevant Opinion Evidence**

On March 22, 2023, Mr. Kates attended a consultative psychological evaluation with Bryan Krabbe, Psy.D. (Tr. 687-93). As part of the evaluation, Dr. Krabbe reviewed Mr. Kelly's August 2021 evaluation. (Tr. 687). To Dr. Krabbe, Mr. Kates reported working 40 to 50 different jobs and being terminated from employment on several occasions. (Tr. 689). He complained of insomnia, poor mood, feelings of worthlessness, decreased motivation and concentration, and social withdrawal. (*Id.*). He denied difficulty with managing stress at work or learning how to perform his prior jobs but endorsed issues with staying focused and completing tasks because his "[m]ind wanders" and he "get[s] distracted." (*Id.*) (cleaned up). He also described difficulty sustaining

4

attention, following instructions, organizing tasks, avoiding tasks that require sustained mental effort, losing items, and being easily distracted and forgetful. (*Id.*). During sensorium and cognitive function testing, Mr. Kates put forth variable effort. (*See* Tr. 690, 692). For instance, during immediate memory and attention testing, Mr. Kates recalled four digits backwards, suggesting an average ability to recall. (*Id.*). And Mr. Kates had no difficulty following the conversation or responding to direct questions. (*Id.*). But he refused to count backwards from 100 by 7s or from 20 by 3s, tests designed to evaluate attention and concentration. (*Id.*). Dr. Krabbe offered three following observations:

(1) Mr. Kates "reported problems with learning in school and received special education services, which may lead to difficulties acquiring new information in work settings";

(2) Mr. Kates "was unwilling to complete both serial 7s and serial 3s tasks, which suggests difficulty maintaining attention and focus"; and

(3) Mr. Kates he described symptoms of depression that "could result in increased worry and a corresponding decrease in attention and concentration" and "may compromise his ability to respond to work pressures leading to increased emotional instability and withdraw[al]."

(Tr. 692-93).

On March 24, 2023, state agency psychological consultant Jennifer Swain evaluated Mr. Kates' medical records and assessed his residual functional capacity (RFC). (Tr. 89-108). She determined Mr. Kates is moderately limited in his abilities to: (1) maintain attention and concentration for extended period of time; (2) complete a normal workday and workweek without interruptions from symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) respond appropriately to changes in the work setting. (Tr. 97, 107). She opined Mr. Kates can "perform simple or complex tasks that do not require

5

more than a few minutes of extended concentration to complete each individual task" and "handle occasional changes to a work routine/schedule that are brought on slowly." (*Id.*).

IV.     **Relevant Testimonial Evidence**

At the hearing, Mr. Kates stated he does not take medication for depression or anxiety but does attend counseling sessions about every two months. (Tr. 60-61). He is highly allergic, so he does not take many medications. (Tr. 62). Mr. Kates enjoys reading how-to books and historical accounts, but he "quite often" must reread the same passage again. (Tr. 56, 65).

The VE opined that a person of Mr. Kates' age, education, and experience could not perform his past relevant work as a tree cutter but could perform other medium exertion jobs (including floor waxer, laundry worker, and dining-room attendant) if subject to the ALJ's stated restrictions. (Tr. 67-69). Mr. Kates emphasizes the following exchange between counsel and the VE as relevant to his claims of error:

> Q: In all these jobs you identified, would you say that all of these be performed and completed with concentration of just a few minutes?
>
> A: No.
>
> Q: In all these jobs—these are all SVP 2 jobs that requires up to 30 days to be able to learn that—those jobs. Correct?
>
> A: That's correct, yes.
>
> Q: So if a hypothetical employee would require up to 30 days any time that there was a change such that the change would need to be brought on slowly over that time, is that something that's going to be normally appropriate in a competitive work environment, or would that need some kind of a special accommodation?
>
> A: That would typically fall within an accommodation.

(Tr. 72).

6

## STANDARD FOR DISABILITY

Eligibility for benefits turns on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Commissioner follows a five-step evaluation process found at 20 C.F.R. §§ 404.1520, 416.920 to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Mr. Kates had not engaged in substantial gainful activity since December 31, 2018, the alleged onset date. (Tr. 20). At Step Two, the ALJ identified "left

7

knee meniscus tear; headache; syncope; and psychological conditions variously described as major depressive disorder and ADHD" as severe impairments. (*Id.*). At Step Three, the ALJ found Mr. Kates' impairments did not meet the requirements of, and were not medically equivalent to, a listed impairment. (Tr. 21).

At Step Four, the ALJ determined Mr. Kates' RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except: the claimant can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; and frequently balance, crouch, kneel, stoop, and crawl as set forth in the DOT. With the bilateral upper extremities, he can frequently reach overhead and feel. With the left lower extremity, he can frequently operate foot controls and push and/or pull. He cannot work around unprotected heights, vibrations, heavy machinery, unprotected moving mechanical machinery, or sharp unprotected implements. He cannot operate heavy machinery or perform any occupational driving. The claimant can understand, remember, and carry out simple, routine tasks but not at a production rate pace such as required working on an assembly line. He can make judgments on simple work and respond appropriately to usual work situations where duties are generally stable, short-cycle, and predictable and adapt to occasional changes in a routine work setting where changes outside the normally expected changes associated with the job task functions are explained in advance. He can have occasional interaction with the general public, supervisors, and coworkers but cannot engage in tasks that require persuasion or conflict resolution.

(Tr. 24). The ALJ then found Mr. Kates could not perform his past relevant work as a tree cutter. (Tr. 29). At Step Five, the ALJ found Mr. Kates could perform other work in the national economy such as a floor waxer, laundry worker, and dining-room attendant. (Tr. 30). Thus, the ALJ concluded Mr. Kates was not disabled. (Tr. 31).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But:

> [A] substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.

*Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters*, 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its

9

own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## Discussion

Mr. Kates argues the ALJ committed two errors: (1) not explaining why she omitted Dr. Swain's opined restrictions from the RFC; and (2) not evaluating Dr. Krabbe's opinion at all. (*See* ECF #10 at PageID 875-76). The Commissioner responds that "the RFC reasonably accounts for Dr. Swain's statements about [Mr. Kates'] moderate limitations," and, as to Dr. Krabbe's opinion, argues "because Dr. Swain expressly and clearly incorporated Dr. Krabbe's medical opinion into her [prior administrative medical findings], the court should find the ALJ sufficiently considered this evidence." (ECF #12 at PageID 886, 889).

In assessing the claimant's RFC at Step Four, the ALJ must review all medical opinions and prior administrative findings and explain how persuasive she finds them. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015). The ALJ considers five factors to determine persuasiveness: (1) supportability; (2) consistency; (3) the source's relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining

relationship; (4) the source's specialization; and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The regulations require the ALJ to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinion," the two most important factors. *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ's explanation should "generally include[] an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or prior administrative medical finding is with other evidence in the claim." *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5859, 2017 WL 168819 (Jan. 18, 2017). The reasons for the ALJ's conclusions must be stated in a manner that allows the reviewing court to "trace the path of the ALJ's reasoning" from evidence to conclusion. *Stacey v. Comm'r of Soc. Sec.*, 451 F.App'x 517, 519 (6th Cir. 2011). If the ALJ discusses both consistency and supportability, and substantial evidence supports the discussion, then the court may not disturb the ALJ's findings. *Paradinovich v. Comm'r of Soc. Sec.*, No. 1:20-cv-1888, 2021 WL 5994043, at *7 (N.D. Ohio Sept. 28, 2021), *report and recommendation adopted*, 2021 WL 5119354 (N.D. Ohio Nov. 4, 2021).

The ALJ need not adopt a state agency psychologist's opinion verbatim or wholesale. *Reeves*, 618 F.App'x at 275; *see also Aerial T. v. Comm'r of Soc. Sec.*, No. 2:23-cv-04188, 2025 WL 798367, at *3 (S.D. Ohio Mar. 13, 2025) ("The ALJ is not required to describe the claimant's limitation using the exact language of those medical sources as long as substantial evidence demonstrates that the ALJ adequately portrayed the claimant's limitations in the RFC."). But "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why

11

the opinion was not adopted." Social Security Ruling 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ's failure to provide such an explanation requires remand when it prevents a court from conducting a meaningful review to decide whether substantial evidence supports the ALJ's decision. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F.App'x 411, 414 (6th Cir. 2011).

The ALJ evaluated Dr. Swain's opinion as follows:

> Also at the reconsideration level, Dr. Jennifer Swain opined that the claimant would be able to perform simple or complex tasks that do not require more than a few minutes of extended concentration to complete each individual task. The claimant could handle occasional changes to a work routine/schedule that are brought on slowly. The undersigned finds this finding somewhat persuasive. The majority of the findings may have been supported by the evidence in the file at the time of Dr. Swain's review, they are not now entirely consistent with the evidence in the file. Additional records were submitted after these reviews, which support greater limitations. A complete review of the entire file supports limiting the claimant to a reduced range of work at the medium exertional level with additional limitations, including, that he can understand, remember, and carry out simple, routine tasks but not at a production rate pace such as required when working on an assembly line. He can make judgments on simple work and respond appropriately to usual work situations where duties are generally stable, short-cycle, and predictable and adapt to occasional changes in a routine work setting where changes outside of the normally expected changes associated with the job task functions are explained in advance. At the psychological examination, the claimant's attention and concentration skills were below average. He did not display effective task persistence when answering questions, and he provided inconsistent effort.

(Tr. 28-29).[3]

In short, the ALJ discounted Dr. Swain's opinion because evidence obtained after Dr. Swain's review—Dr. Krabbe's consultative evaluation—supported greater limitations. Undermining the ALJ's conclusion here is that Dr. Swain did, in fact, consider Dr. Krabbe's evaluation as part of her RFC assessment, including Dr. Krabbe's findings of below-average attention and concentration skills and poor task persistence. (*See* Tr. 94, 103).

---

[3] The psychological examination to which the ALJ refers is Dr. Krabbe's consultative psychological evaluation.

12

Mr. Kates first argues the ALJ erred when she found Dr. Swain's opinion somewhat persuasive but did not explain why two of the opined limitations were omitted from the RFC: (1) Mr. Kates can perform tasks "that do not require more than a few minutes of extended concentration to complete each individual task," and (2) changes to the normal work routine must be "brought on slowly." (ECF #10 at PageID 874-76). According to the Commissioner, the RFC's restrictions to "simple, routine tasks but not at a production rate pace" and "short cycle" work are consistent with Dr. Swain's findings. (ECF #12 at PageID 887).

The Commissioner's defense of the ALJ's decision falls short. First, the regulations plainly require that an ALJ "set forth a 'minimum level of articulation'" as to how she considered the supportability and consistency factors for a medical source's opinion. *See* 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability is "the extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation" and consistency is "the extent to which the opinion is consistent with evidence from other medical sources and nonmedical sources in the claim." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5853. Here, the ALJ did not explain how she considered the supportability of Dr. Swain's opinion. Instead, she concluded without explanation that the evidence of record supports the RFC she assessed. And while the ALJ cited findings showing Mr. Kates displayed below-average attention and concentration skills and issues with task persistence, the ALJ did not explain how those findings were inconsistent with Dr. Swain's concentration-based restriction or why a restriction from work at a production rate pace accounts for his issues with concentration and persistence.

In some cases, an ALJ's error in evaluating a medical opinion does not require remand because the error was harmless. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (courts generally review administrative agency decisions for harmless error); *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (noting that courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality"). The Sixth Circuit has not addressed when an ALJ's failure to analyze a medical opinion for supportability and consistency must be disregarded as harmless error. *See Brooks v. Comm'r of Soc. Sec.*, No. 2:22-cv-158, 2024 WL 966560, at *6 (E.D. Tenn. Mar. 6, 2024). But under the former regulations governing the evaluation of medical opinions, the Sixth Circuit determined that when an ALJ does not strictly comply with legal procedures for evaluating opinions, such error may be harmless when: (1) the opinion is so patently deficient it could not be credited; (2) the opinion was actually adopted; or (3) the ALJ met the goal of these procedural safeguards, despite not strictly complying with the regulations. *Wilson*, 378 F.3d at 547. The articulation requirement is intended to let claimants understand the disposition of their case and to permit meaningful review of the ALJ's evaluation. *Id.* at 544 (citations omitted). District courts in this circuit continue to apply that harmless-error standard under the current regulations. *See Musolff v. Comm'r of Soc. Sec.*, No. 1:21-cv-1739, 2022 WL 1571864, at *13 (N.D. Ohio Apr. 27, 2022) (collecting cases).

Here, the ALJ's error is not harmless. The ALJ's mistaken conclusion that Dr. Swain did not review Dr. Krabbe's report combined with the ALJ's failure to explain the supportability factor or how the findings pulled from Dr. Krabbe's report are inconsistent with Dr. Swain's findings

14

prevent me from deciding whether substantial evidence supports the ALJ's evaluation of Dr. Swain's opinion.

Next, Mr. Kates argues the ALJ erred when she did not evaluate Dr. Krabbe's opinion at all. (ECF #10 at PageID 876). True enough, the ALJ did not articulate how she considered the supportability or consistency of Dr. Krabbe's opinion. The ALJ referred to some of Dr. Krabbe's observations throughout the decision but offered no evaluation of how persuasive she found the opinion. For instance, in the functional area of concentration, persistence, and pace, the ALJ concluded Mr. Kates has a moderate limitation based, in part, on Dr. Krabbe's evaluation. (Tr. 22-23).

The Commissioner contends the ALJ sufficiently considered Dr. Krabbe's opinion because Dr. Swain "expressly and clearly incorporated Dr. Krabbe's medical opinion into her [prior administrative medical findings]." (ECF #12 at PageID 889). "[T]he complete omission of a medical opinion in an ALJ's decision would generally constitute a lack of substantial evidence and compel remand." *Monateri v. Comm'r of Soc. Sec.*, 436 F.App'x 434, 444 (6th Cir. 2011). But there exists an exception to that general rule where the "records and opinions were explicitly incorporated into the medical opinion given by [another of the claimant's medical sources] and were considered by the ALJ." *Id.* In *Monateri,* the claimant received mental health treatment from several psychiatrists at Pathways Mental Health Center, including Dr. Bertschinger and Dr. Svete, both of whom offered medical opinions for the ALJ's review. *Id.* at 436. Dr. Svete, who treated the claimant most recently, said that his conclusions were based "both on his personal medical observations and on his review of [the claimant's] *entire medical record* from Pathways." *See id.* at 444 (emphasis in original). In addition, the claimant "acknowledged that it was her intent that Dr.

15

Svete's opinion convey the medical determination of all of her physicians at Pathways." *Id.* The Sixth Circuit concluded that because Dr. Svete expressly and clearly incorporated Dr. Bertschinger's notes and opinions, and because the claimant requested the ALJ treat Dr. Svete's opinion as incorporating her entire medical record from Pathways, the ALJ's failure to mention Dr. Bertschinger by name does not constitute a lack of substantial evidence. *Id.*

I am not persuaded that *Monateri* applies here. Here, Mr. Kates did not ask the ALJ to treat Dr. Swain's opinion as incorporating Dr. Krabbe's opinion, thereby permitting the ALJ to forgo the requirement to evaluate Dr. Krabbe's opinion, as the claimant in *Monateri* did. For that reason, I conclude the ALJ's failure to evaluate Dr. Krabbe's opinion is reversible error.

## Conclusion

Following review of the arguments presented, the record, and the applicable law, I **REVERSE** the Commissioner's decision denying disability insurance benefits and supplemental security income and **REMAND** for other proceedings not inconsistent with this decision.

Dated: November 17, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

16